**No. 12,003.**

STATE EX REL. HENRY BIER VS. REMY KLOCK, CRIMINAL SHERIFF, ET AL.

The powers of the District Attorney to enter a *nolle prosequi* are subject to certain limitations.

1. After the jury has been empaneled and the charge read, he can not discontinue if the defendant insists upon a verdict.

2. After verdict and refusal to grant a motion for a new trial, he is without authority to dismiss the prosecution without the authority of the court.

After verdict and conviction a pardon may be granted.

State ex rel. Bier vs. Sheriff et al.

APPLICATION for *Habeas Corpus.*

*Lazarus, Moore & Luce* and *E. B. Kruttschnitt* for Relator.

*E. Howard McCaleb* and *Richard H. Browne* for Respondents.

Argued and submitted December 12, 1895.
Opinion handed down December 21, 1895.

The opinion of the court was delivered by

BREAUX, J.   In answer to the order *nisi* issued by this court on the application of the plaintiff for a writ of *habeas corpus*, omitting the words of form, the sheriff says that the plaintiff is held by him under a *capias* and commitment issued by the Judge of Section B of the Criminal District Court, by reason of a verdict of guilty of the crime with which he was charged.

The question in the case is, whether the District Attorney, in his motion having substantially averred that the testimony of the plaintiff had been accepted by the State, and the ends of justice suggesting, could have a *nolle prosequi* entered after verdict and the action dismissed.

It is only an act of justice to the prosecuting officer to add that a majority of the grand jurors who indicted the plaintiff, and all the grand jurors of a subsequent term of the court, as well as eleven of the petit jurors who heard the cause, signed petitions requesting him to present a motion for a discontinuance of the case; he also made a certificate of a highly reputable physician in regard to the dangerous illness of the plaintiff and the needful opportunity for recuperating, that he might testify, part of the motion.

Plaintiff urges that the detention of his person is oppressive and without process of law, no judgment having been rendered.

There can be no question that the effect of the different acts in regard to the functions of the District Attorney invests him, under some limits, with the authority to represent the State in criminal cases.   With energy and force the common law of England is invoked at the bar as applying to the question here involved.

To illustrate the power claimed we state the proposition thus: The Attorney General in England has control of the *nolle prosequi*; the Attorney General here has similar authority; the District Attorney's duties are not different from those of the Attorney General of Louisiana, therefore the former, the District Attorney, is charged with all the powers of the Attorney General in England.

If we were to accept the foregoing as conclusive we might illustrate by the familiar example: $A = X$ power $B = A$, therefore $B$ equals $X$. Unfortunately, the issues involved are not as easily disposed of; not being similar in all respects to the familiar axiom: things equal to the same thing are equal to each other.

The powers are in certain particulars entirely different; the period, the locality, the condition and many other differences suggest themselves.

The Attorney General in England is the sovereign's "own Attorney General," and is vested with many and various functions. It is said that the power to enter a *nolle prosequi* is completely in the hands of this high officer of the crown, and that no other person, official or unofficial, can prevent its exercise. The crown has no local prosecuting officer.

Granted (for the moment, for we have authority not in accord with the foregoing, to which we will hereafter refer) that the powers are as just stated; the limitation in England is not entirely without application here; the necessity for expanding the power, under the terms of the law, is not more evident here than it was in England. Why should the power of the Attorney General in regard to the *nolle prosequi*, not distributed in England, be distributed in the twenty-two judicial districts of this State, without express exactment?

But we recur to the authority of that officer and quote as follows, as pertinent: "In the Oyer and Terminer case, in New York, it was considered to be a question for the court to decide on motion of the prosecuting officer, 'whether or not to admit an accomplice,' and in the particular instance the court refused. Said Duer, J.: 'So long as by the policy of the law accomplices are deemed competent witnesses against their fellows, so long must a discretion in regard to admitting them be vested somewhere or other in the government. It could not consistently with the nature of the power or the course and character of judicial proceedings be committed to the Chief Executive Magistrate; nor could it with propriety be entrusted to

the public prosecutor or any other ministerial officer of justice; because, strictly speaking, it is the exercise of a high judicial discretion, and the reason for vesting it in the court, rather than in the committing magistrate, or even in the public prosecutor, is, that the admission of the party as a witness amounts to a promise by the court of a recommendation to mercy upon condition of his making a full and fair disclosure of all the circumstances of the crime. People vs. Whipple, 9th Con. 707 and 712. To the like effect see Roy vs. State, 1st Green (Iowa), 316.'

"Now it is plain that this reasoning is satisfactory as accounting for the English practice." * * * Bishop, C. P., Sec. 1076, 2d Ed. If this be a correct statement of the English practice (the common law), the court is not entirely ignored in entering the *nolle prosequi* on motion of the prosecuting officer after verdict.

This brings us to the question: the effect to be given the jury's verdict. It is a conviction. From Blackstone: "After trial and conviction are passed, and prior to judgment and its consequence, the defendant was entitled to the benefit of clergy, which operates as a kind of statute of pardon."

We refer to the benefit of clergy, not as an existing statute, but as an illustration of intervening pleas possible, among them the sovereign's pardon.

Lastly, says that commentator: a pardon may be pleaded in bar as at once destroying the end and purpose of the indictment by remitting the punishment which the prosecution is calculated to inflict.

"There is one advantage that attends pleading a pardon in bar or in arrest of judgment before sentence is passed." Cooley's Ed. Blackstone, Sec. 358.

In this State the executive is authorized to grant a pardon after conviction. The authorities would not support the right to have considered the application of the defendant prior to a final disposition of the case; but the Pardoning Board may, as a matter of grace, pass upon the application prior to final judgment.

Lastly, in regard to defendant's waiver of the plea of jeopardy.

"The more general opinion is that the defendant may waive his constitutional privilege" by a consent to the discharge of the jury, or to a separation, or by a motion for a new trial, or by a motion in arrest, or for vacation of judgment. But strictly, such a consent can not be operative, tendered as in this case, some time

after the motion to enter the *nolle prosequi* had been tendered. The questions are determinable upon the state of facts of record at the time they are tendered for the court's decision.

But as we think it evident that the defendant offers to waive that plea, we will in consequence not decline to consider the application from this point of view.

The motion in arrest of judgment lies for informalities on the face of the pleadings. It relates back to a period anterior to the verdict (and ordinarily not to the incidents subsequent), so that the verdict and the refusal to grant a new trial are final as to the guilt or innocence of the defendant, and if found guilty the sentence must follow and be final, save and except if there are informalities preceding the sentence.

The law does not seem to contemplate that at the period between the refusal of the new trial and the sentence the District Attorney may, without the consent of the court, abandon the prosecution, any more than it would be possible for that officer, after the defendant in regular proceedings had been found "not guilty" to have a motion entered of guilty based upon defendant's waiver of the verdict of "not guilty." The period of jeopardy is no longer the same after verdict. There is a wide difference, said Duncan, Judge, "between a verdict given and the jeopardy of a verdict. Hazard, peril, danger, jeopardy of a verdict, can not mean a verdict given." Commonwealth vs. Cook, 6 S. and R. 577, 596.

In conclusion, as we interpret the law and the decisions here, the District Attorney may, at his discretion, dismiss the prosecution *prior* to verdict, subject to the prisoner's right to insist on the trial after the jury has been empaneled and the charge read.

It is therefore ordered and adjudged that the present application be denied and the proceedings for *habeas corpus* dismissed.